## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 17 2017, 8:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Marjorie Newell
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of M.L. and A.L. (Minor Children), <br><br> and <br><br> A.H. (Mother) <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | February 17, 2017 <br><br> Court of Appeals Case No. 91A02-1607-JT-1758 <br><br> Appeal from the White Circuit Court <br><br> The Honorable Robert W. Thacker, Judge <br><br> Trial Court Cause Nos. 91C01-1510-JT-14 91C01-1510-JT-15 |

**Mathias, Judge.**

[1] A.H. ("Mother") appeals the judgment of the White Circuit Court terminating Mother's parental rights to her daughter M.L. ("Daughter") and her son A.L. ("Son"). On appeal, Mother claims that the evidence was insufficient to support the trial court's decision to terminate her parental rights.

[2] We affirm.

## Facts and Procedural History

[3] Mother and A.L. ("Father") were in a romantic relationship and had two children, Daughter, who was born in October 2008, and Son, who was born in March 2014. Due to the parents' use of methamphetamine, Daughter has been removed from their care twice before this case began: the first time in 2009 and again in 2010. Both of these removals resulted in Daughter being determined to be a child in need of services ("CHINS"). As a result of the 2010 case, Mother was convicted of neglect of a dependent and possession of methamphetamine. Mother appears to have temporarily stopped using methamphetamine after being treated at the Lighthouse Rehabilitation Center in Washington, Indiana, and neither of these prior CHINS cases resulted in the termination of either parents' parental rights. However, Mother soon relapsed.

[4] Between May 2012 and May 2013, Mother bought pseudoephedrine twenty-one times. On two other occasions, she attempted to purchase pseudoephedrine but was unsuccessful. Mother's family members were concerned that she was using and manufacturing methamphetamine. In May 2014, DCS received a

report that Mother and Father were manufacturing methamphetamine and using it regularly. When DCS investigated, Mother and Father denied using but refused to be tested for drug use. They did agree to have Daughter and Son tested, however. The children underwent hair follicle testing on June 4, 2014. The tests came back as positive for methamphetamine. Accordingly, DCS removed the children from the parents' care on June 10, 2014. Mother eventually admitted to using methamphetamine but claimed not to have done so in the presence of the children, a claim apparently contradicted by the results of the drug tests.

On August 14, 2014, Daughter and Son were both determined by the trial court to be in need of services. The children were placed with Mother's cousin for one day but were put in non-relative foster care when DCS became aware that Mother's cousin's husband was also purchasing large amounts of pseudoephedrine. Later that month, the children were placed with their paternal grandparents, where they have remained since.

On September 5, 2014, the trial court entered a dispositional order requiring Mother to participate in the offered services, follow DCS's recommendations, complete a substance abuse assessment and follow all the recommendations after the assessment, refrain from using and manufacturing illicit substances, submit to random drug screenings, maintain a legal and stable source of income, and maintain safe, stable, and suitable housing. The long-term goal was at this point reunification of the children with the parents.

[7] Mother did undergo a substance abuse assessment, and it was recommended that she participate in intensive outpatient therapy ("IOP"). Despite several attempts by DCS to get Mother to participate in IOP, she failed to complete the program. Mother's cooperation with drug testing was similarly poor. From September 12, 2014 to June 29, 2015, Mother either refused to take or failed to show for twenty-two of the forty-four scheduled drug screens. Although Mother maintained a brief period of sobriety from November 2014 to March 2015, Mother consistently tested positive for methamphetamine use from March 2015 until November 2015. Mother also refused to submit to any drug screen since November 2015. This is consistent with Mother's history of methamphetamine use, which dates back to at least 2006.

[8] As found by the trial court, Mother was incarcerated multiple times during the course of the CHINS case. During 2015, she was arrested twice for theft and once for possession of methamphetamine. At the time of the termination hearing, Mother was serving ten weekends in the Gibson County jail as part of her most recent conviction for theft, and she was awaiting sentence in her most recent conviction for possession of methamphetamine, which would most likely result in further incarceration.

[9] Mother also struggled to maintain steady housing and employment. She was homeless for a period of time and moved multiple times during the pendency of the CHINS case. Although Mother claimed to have various jobs through a temporary agency, except for one time, she refused to provide DCS with proof of her employment.

Mother did consistently participate in visitation with Daughter and Son, but she was consistently late, as well. Mother's tardiness resulted in the children being distressed. The visitations were fully supervised at the offices of Ireland Home Based Services ("Ireland"), but in March 2015, the visitations were moved to Mother's home and were only partially supervised. However, Mother then refused to submit to a drug test, causing DCS to obtain a court order requiring Mother to submit to a test. When she did, the test came back positive for methamphetamine, and the visitations were again returned to Ireland and were fully supervised. The children initially wanted to visit with Mother and interacted with her in a positive way, but they have recently become more withdrawn during visits and expressed a desire not to go.

On June 15, 2015, DCS requested that the permanency plan be changed from reunification to adoption. The trial court denied this request in an effort to give Mother "one more opportunity to turn her life around for her children." Appellant's App. pp. 45, 64. Mother, however, continued to test positive for methamphetamine.

Accordingly, on September 18, 2015, DCS again petitioned the trial court to change the permanency plan from reunification to adoption. This time, the trial court granted DCS's request and set a review hearing to be held on December 9, 2015. On October 29, 2015, DCS filed a petition to terminate Mother's parental rights. Despite having notice of the December 9 review hearing, Mother failed to appear.

[13] Before the final evidentiary hearing on the termination petition, Father voluntarily terminated his parental rights. The trial court held an evidentiary hearing regarding the termination of Mother's parental rights on April 4, 2016. At the conclusion of the hearing, the trial court took the matter under advisement and, on May 23, 2016, entered findings of fact and conclusion of law granting DCS's petition and terminating Mother's parental rights to Daughter and Son. Mother now appeals.

## Termination of Parental Rights

[14] The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

[15] Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1261. But because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.3d 212, 220 (Ind. Ct. App. 2010).

Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial

court's judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## I. Conditions that Resulted in Children's Removal

[19] Mother first contends that the trial court clearly erred in concluding that there was a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Mother's home would not be remedied. Mother's argument has little merit.

[20] When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). However, the trial court may disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013). The termination statute does not simply focus on the initial reason for a child's removal in determining whether a parent's rights should be terminated, but also those reasons resulting in the continued

placement outside the home. *In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013).

[21] Here, the reason for the children's removal from Mother and their continued placement outside of her home was Mother's obvious addiction to and repeated use of methamphetamine. Mother refers us to evidence before the trial court that indicated she had recently began to make progress to combat her substance abuse problem. Specifically, she notes that there was evidence that she ended her relationship with Father, recently started to attend N.A. meetings and intensive outpatient therapy, and had not recently tested positive for illicit drug use.

[22] All of this evidence was before the trial court, and Mother's argument is little more than a request that we consider evidence not favorable to the trial court's decision, reweigh this evidence, and come to a conclusion different than that reached by the trial court. This, of course, is not our role as an appellate court. *See In re D.B.*, 942 N.E.2d at 871. Furthermore, as noted by DCS, these changes in Mother's behavior came only after Mother's most recent arrest and shortly before the termination hearing. Thus, the trial court was well within its discretion to disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d at 1234. Mother has a long history of methamphetamine abuse and criminal activity and convictions associated with this methamphetamine use. Mother has also been involved with two prior CHINS cases regarding Daughter, and these CHINS cases were also based on Mother's use of

methamphetamine. Indeed, Mother was even convicted of neglect of Daughter based on her use of methamphetamine. Mother has repeatedly participated in substance abuse treatment, only to fail or relapse.

[23] Under these facts and circumstances, the trial court did not clearly err by concluding that there was a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Mother's home would not be remedied. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (concluding that evidence supported trial court's finding that the conditions that led to children's removal, specifically parents' substance abuse, would not be remedied, where mother's substance abuse worsened when children were returned to her for a trial home visit, and mother failed to participate in substance abuse treatment), *trans. denied*.

## II. Continuation of Parent-Child Relationship

[24] Mother also argues that the trial court clearly erred in determining that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children. We first observe that Section 4(b)(2)(B) is written in the disjunctive; accordingly, the trial court is required to find that only one prong of Indiana Code section 31-35-2-4(b)(2)(B) has been established. *In re A.K.*, 924 N.E.2d at 220. Because we conclude that DCS proved that there was a reasonable probability that the conditions which resulted in the children's removal from Mother's care would not be remedied, we need not address Mother's arguments directed at the "threat" prong of Section 4(b)(2)(B). *See In re A.K.*, 925 N.E.2d at 220.

[25]     Even if we address the "threat" prong of Section 4(b)(2)(B), however, Mother does not prevail. In addressing the threat prong of section 4(b)(2)(B), the trial court must consider the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *A.D.S.*, 987 N.E.2d at 1157. The trial court may consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. *Id.*

[26]     Mother's habitual patterns of conduct show that Mother has been addicted to methamphetamine for years and used methamphetamine throughout the vast majority of the underlying CHINS case. Even though the trial court gave Mother extra time to demonstrate that she could change her behavior, she continued to test positive for use of methamphetamine. As a result of her methamphetamine addiction, Mother has been unable to maintain steady employment or stable housing, and she has been arrested and incarcerated for both theft and possession. The children had been removed from Mother's care since June 2014, and between then and the April 2016 termination hearing, Mother had made precious little improvement. She had yet to complete any of the drug treatment, had tested positive for methamphetamine as recently as November 2015, and had refused any drug tests thereafter.

[27]     Mother is correct to note that there was no indication that she physically abused the children. However, a finding of physical abuse is not required before a trial

court may determine that the continuation of the parent-child relationship poses a threat to a child's well-being. *See In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) ("Although there was no specific testimony that either parent had physically abused A.I., there can be little doubt that the parties' serious substance abuse addictions detrimentally affected or greatly endangered her.").

[28] Given Mother's drug addiction, her resulting failure to demonstrate an ability to adequately care for the children, and her lack of progress throughout the history of this case, the trial court could readily conclude that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the children.

### III. Termination in Best Interests of the Children

[29] Lastly, Mother argues that the trial court erred in concluding that termination of the parent-child relationship was in the best interests of the children. In determining what is in the best interests of the child, the trial court must look beyond the factors identified by DCS and to look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158. The trial court must subordinate the interests of the parent to those of the child, and the court need not wait until the child are irreversibly harmed before terminating the parent-child relationship. *Id.* A recommendation by the case manager or child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[30] Here, the trial court concluded that "[b]ased on Mother's lack of progress and her refusal or inability to improve her capacity to provide proper care and nurturing for the child, adoption and termination of parental rights is in the child's best interests." Appellant's App. pp. 48, 67. Ample evidence supports this conclusion.

[31] Mother's continued drug use and her inability to maintain any progress in her treatment clearly demonstrate that Mother was still in no condition to regain custody of her children. Nor was the trial court required to, yet one more time, wait and see if Mother would progress if given more time. The children had been in out of Mother's custody for almost two years at the time of the termination hearing. The children were doing well in foster care with their paternal grandparents, who desired to adopt the children. The family case manager testified that it was in the children's best interests to remain with the grandparents. The guardian ad litem testified similarly.

[32] Mother complains that, if the paternal grandparents adopt Daughter and Son, then she will be cut off from her children, but Father, who voluntarily terminated his parental rights, will likely continue to have a relationship with the children. However, as noted by the trial court, whether adoption by the paternal grandparents is in the children's best interests is a question for the adoption court, not the termination court. *See* I.C § 31-19-11-1 (requiring adoption court to find that adoption is in the best interests of the child before granting a petition for adoption); I.C. § 31-19-10-6 (requiring adoption court to dismiss petition for adoption if it is established that it is in the best interests of

the child that a motion to contest an adoption be granted). Even if Father has some contact with his children, his rights as a parent have been terminated, as have Mother's.

[33] In short, the evidence supports the trial court's conclusion that termination of the parent-child relationship was in the best interests of the children.

## Conclusion

[34] DCS presented sufficient evidence to support the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal from Mother's care would not be remedied and that the continuation of the parent-child relationship posed a threat to the children's well-being. The evidence was also sufficient to support the trial court's conclusion that termination of the parent-child relationship was in the children's best interests. Accordingly, we affirm the judgment of the trial court terminating Mother's parental rights to Daughter and Son.

[35] Affirmed.

Baker, J., and Pyle, J., concur.